LESLIE T. KRASNY, State Bar Number 104604
RICHARD J. LEIGHTON (to be admitted *pro hac vice*)
RICHARD F. MANN (to be admitted *pro hac vice*)
DOUGLAS J. BEHR (to be admitted *pro hac vice*)
FRANK J. VITOLO (to be admitted *pro hac vice*)
KELLER AND HECKMAN LLP
California Street Center
50 California Street, Suite 1500
San Francisco, California 94111
Telephone: (415) 277-5952
Facsimile: (415) 439-5299

Attorneys for Plaintiff
SALESFORCE.COM, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

**BZ**

| | |
|---|---|
| SALESFORCE.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>UPSHOT CORPORATION, a California corporation,<br><br>Defendant. | Case No. __3228__<br><br>**COMPLAINT FOR:**<br>(1) FALSE ADVERTISING & UNFAIR COMPETITION;<br>(2) COMMON LAW UNFAIR COMPETITION;<br>(3) UNFAIR BUSINESS PRACTICES UNDER CAL. BUS. & PROF. CODE § 17200;<br>(4) FALSE ADVERTISING UNDER CAL. BUS. & PROF. CODE § 17500;<br>(5) TRADE LIBEL;<br>(6) COMMON LAW UNJUST ENRICHMENT, and<br>(7) EQUITABLE RELIEF<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Salesforce.com, Inc., ("Salesforce") alleges for its Complaint against Defendant

Upshot Corporation ("Upshot") as follows:

KELLER AND HECKMAN LLP
50 California Street, Suite 1500, San Francisco, CA
Telephone: 415-277-5952 Fax: 415-439-5299

KELLER AND HECKMAN LLP
50 California Street, Suite 1500, San Francisco, CA
Telephone: 415-277-5952  Fax: 415-439-5299

## JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, § 1332 (a) and (b), 15 U.S.C. § 1338 (a) and (b), 15 U.S.C. § 1121, and this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

2.    The claims stated in this action arise under 15 U.S.C. § 1125 (a) and 1126, California Business & Professional Code §§ 17200 *et seq.* and §§ 17500 *et seq.*, and the common law.

## PARTIES

3.    Plaintiff Salesforce is a corporation organized under the laws of the State of Delaware, with its principal place of business located in San Francisco, California.

4.    Defendant Upshot is a corporation organized under the laws of the State of California, with its principal place of business located in Mountain View, California.

## VENUE

5.    Venue in this Court is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred here.

## INTRADISTRICT ASSIGNMENT

6.    Venue is proper in this Division under Civil L.R. 3-2 because a substantial part of the events giving rise to the claims occurred here.

## BRIEF STATEMENT OF RELEVANT FACTS

7.    Salesforce was founded in 1999 and is a worldwide leader in the rapidly expanding market for Internet Web-based Customer Relationship Management ("CRM") services.

8.    CRM utilizes specialized programs to customize, tailor, and target services to customers.  Internet Web-based CRM solutions are offered to businesses via the Internet by Application Service Providers such as Salesforce, thereby eliminating the need to load significant

1    amounts of software on personal computers or network servers. In this way, businesses may

2    lower overhead costs and minimize the burden of having to buy, maintain, and install software.

3        9.    Over 6,000 companies of various sizes use Salesforce's software products and

4    services to manage their sales, marketing, and customer service and support operations.

5        10.    Upshot was founded in 1996 and is a direct competitor of Salesforce in providing

6    CRM services.

7        11.    Salesforce leads Upshot in terms of revenues, market share, and number of customers

8    relating to CRM services.

9        12.    Upshot advertises and promotes (collectively "advertises" and all other forms of

10    those terms) its products and services in interstate commerce through, among other media, print,

11    Internet advertising, and sales personnel presentations.

12        13.    In or about August, 2002, Upshot commenced a campaign of comparative advertising

13    that expressly and directly targeted Salesforce and represented that (a) Upshot's products and

14    services were superior to Salesforce's and (b) Upshot led Salesforce in terms of the numbers of

15    large- and medium-sized business customers.

16        14.    In September, 2002, Salesforce filed a challenge to these advertisements before the

17    National Advertising Division ("NAD") of the Council of Better Business Bureaus, the

18    advertising industry's self-regulatory forum for informally resolving competitive advertising

19    disputes. Salesforce alleged that the challenged Upshot advertisements contained express and

20    implied representations that were false and misleading.

21        15.    In June, 2003, NAD issued a decision that substantially sustained Salesforce's

22    challenge. Specifically, NAD addressed Upshot's comparative advertising directly targeting and

23    naming Salesforce that made express and implied representations that it offered "The Better

24

KELLER AND HECKMAN LLP
50 California Street, Suite 1500, San Francisco, CA
Telephone: 415-277-5952  Fax: 415-439-5299

1    CRM Online Solution," that it was "the leading, web-based, sales-focused CRM solution," and

2    that its services are superior to those of Salesforce.  NAD held that these Upshot claims were not

3    substantiated and should be discontinued.  A copy of NAD's decision is attached hereto as

4    Exhibit A.

5        16.    Nonetheless, Upshot's campaign of false, deceptive, and misleading targeted

6    advertising against Salesforce has continued.

7        17.    In the June 9, 2003, issue of *Business Week* Magazine, Upshot published a full page

8    advertisement, a copy of which is attached hereto as Exhibit B.

9            (a)    That advertisement features a graphic illustration of a mailbox with the caption

10   that reads, "UpShot:  Built-in Ability to Receive & Store Outlook® E-mail Available Now."

11   Next to the mailbox graphic is a mail box post with a missing mailbox, accompanied by the

12   caption that falsely states, "salesforce.com  Built-in ability to Receive & Store Outlook® E-mail

13   – Not Available."  Contrary to this claim, Salesforce's integrated CRM program does have the

14   ability to receive and store Outlook e-mail.

15           (b)    Immediately beneath the prominent comparative "mailbox" graphic in the

16   *Business Week* advertisement is the following prominent headline:

17
18   **IF YOUR CRM DOESN'T WORK WITH YOUR**
     **OUTLOOK E-MAIL, IT WON'T WORK FOR YOU.**

19   The false message communicated by this headline, in conjunction with the false graphic, is that

20   Salesforce's CRM program does not offer e-mail integration and, therefore, it "won't work" for

21   the customer.

22

23

24

KELLER AND HECKMAN LLP
50 California Street, Suite 1500, San Francisco, CA
Telephone: 415-277-5952  Fax: 415-439-5299

(c)    The body copy of the *Business Week* advertisement features the false representation that "Upshot is the only online CRM solution with the built-in ability to send, receive and store Microsoft Outlook E-mail."

(d)    The body copy of the *Business Week* advertisement falsely concludes with the representation, "So, you see it's no surprise that when Upshot and salesforce.com go head-to-head, nearly twice as many companies choose Upshot."

18.    For an extended period of time and continuing to the present, the home page of the Upshot Internet Website has featured a graphic titled "See Results Now," a copy of which is attached to this complaint as Exhibit C.  The advertisement contains the following false representation:

> Companies that evaluated both solutions [Salesforce and Upshot
> CRM programs] chose Upshot by a nearly 2-to-1 margin.

19.    On information and belief, Upshot has made other representations to potential Salesforce customers, including oral and written representations, as well as representations in various print and Internet media, that falsely represent and imply that Upshot's CRM products and services are superior to those offered by Salesforce and that Upshot has been more successful than Salesforce in attracting customers.

20.    The foregoing literally false, deceptive, and misleading representations by Upshot have damaged, and continue to present the likelihood of damage to Salesforce.  Such literally false, deceptive representations by Upshot about the value, compatibility, and quality of Salesforce's products and services have been the proximate cause of damage to Salesforce and its products' market share, sales, profits, business relationships, reputation, and goodwill, and have caused potential purchasers of Salesforce's products and services to choose Upshot's products

KELLER AND HECKMAN LLP
50 California Street, Suite 1500, San Francisco, CA
Telephone: 415-277-5952 Fax: 415-439-5299

KELLER AND HECKMAN LLP
50 California Street, Suite 1500, San Francisco, CA
Telephone: 415-277-5952 Fax: 415-439-5299

1    and services instead of Salesforce's. Such representations have caused Upshot to gain, and

2    Salesforce to lose, profits, market share, reputation, and good will. Upshot's false, deceptive, and

3    misleading representations are material in that they have a natural tendency to influence, or are

4    capable of influencing, purchasing decisions, and they relate to the essential characteristics,

5    quality, and/or nature of competing products and commercial activities, including value,

6    compatibility, and quality.

### FIRST CAUSE OF ACTION
### False Advertising and Unfair Competition
### (15 U.S.C. § 1125)

9    21.    The averments of all paragraphs of this Complaint are incorporated by reference here.

10    22.    Upshot has advertised its products and services in interstate commerce in the United

11    States, and continues to so advertise and sell its products and services to businesses and

12    individuals, and those who influence purchase decisions relating to such products and services.

13    As shown herein, Upshot has done so by literally false, deceptive, and misleading representations

14    of the nature, characteristics, and qualities of Upshot's products and services and those of

15    Salesforce.

16    23.    Upshot's advertising is material, has deceived, and likely will deceive a substantial

17    portion of its intended audience, including businesses and individual purchasers of Salesforce's

18    products and services, and those who influence purchase decisions relating to such products and

19    services. Members of such audience are likely to, and did, rely on such representations. Such

20    Upshot representations had, and have, a natural tendency and capability to so influence

21    purchasing decisions, and they relate to the essential characteristics, quality, and nature of the

22    competing products and commercial activities, including value, compatibility, and quality.

23

24

1    24.    At all relevant times, Upshot knew that its advertising representations of fact were

2    literally false, deceptive, and misleading, the continued use of which demonstrates that Upshot is

3    and has been acting intentionally, willfully, deliberately, maliciously, egregiously, and in bad

4    faith.

5    25.    Upshot's literally false, deceptive, and misleading representations of fact have

6    caused, are causing, and are likely to continue to cause substantial injury to the public and to

7    Salesforce in the United States, including damage to Salesforce and its products' and services'

8    sales,  profits, business relationships, reputation, and goodwill.

9    26.    Such Upshot's literally false, deceptive, and misleading representations of fact

10    violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

11    27.    Continued use by Upshot of such literally false, deceptive, and misleading

12    representations of fact, unless preliminarily and permanently enjoined by this Court, are likely to,

13    and will result in confusion, mistake, and deception among businesses and individual purchasers

14    and other interested persons.  Such representations will continue to cause irreparable injury to

15    Salesforce unless enjoined.  There exists no adequate remedy at law for some such injuries.

16

### SECOND CAUSE OF ACTION
### Common Law Unfair Competition

17

18    28.    The averments of all paragraphs of this Complaint are incorporated by reference here.

19    29.    Upshot's subject advertising and related actions in connection with the sale of

20    competing products and services constitute intentional unfair competition in violation of

21    Salesforce's rights under the common law of unfair competition of the State of California,

22    causing injury to Salesforce and its products' sales, business relationships, reputation, and

23

24

KELLER AND HECKMAN LLP
50 California Street, Suite 1500, San Francisco, CA
Telephone: 415-277-5952  Fax: 415-439-5299

7

KELLER AND HECKMAN LLP
50 California Street, Suite 1500, San Francisco, CA
Telephone: 415-277-5952 Fax: 415-439-5299

1    goodwill.  Upshot has acted intentionally, willfully, deliberately, maliciously, egregiously, and in

2    bad faith to injure Salesforce.  Salesforce has no adequate remedy at law for some such injuries.

### THIRD CAUSE OF ACTION
### Statutory Unfair Competition
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

30.    The averments of all paragraphs of this Complaint are incorporated by reference here.

31.    Upshot's subject advertising and related actions in connection with the sale of

competing products and services constitute intentional unfair competition and false advertising in

violation of Salesforce's rights under California Business and Professions Code Sections 17200

*et seq.,* causing injury to Salesforce and its products' sales, business relationships, reputation, and

goodwill.  Upshot has acted intentionally, willfully, deliberately, maliciously, egregiously, and in

bad faith to injure Salesforce.  Salesforce has no adequate remedy at law for some such injuries.

### FOURTH CAUSE OF ACTION
### Unfair Competition and False Advertising
### (Cal. Bus. & Prof. Code § 17500 *et seq.*)

32.    The averments of all paragraphs of this Complaint are incorporated by reference here.

33.    Upshot's subject advertising and related actions in connection with the sale of

competing products and services constitute intentional unfair competition and false advertising in

violation of Salesforce's rights under California Business and Professions Code Sections 17200

*et seq.* and 17500 *et seq.,* causing injury to Salesforce and its products' sales, business

relationships, reputation, and goodwill.  Upshot has acted intentionally, willfully, deliberately,

maliciously, egregiously, and in bad faith to injure Salesforce.  Salesforce has no adequate

remedy at law for some such injuries.

KELLER AND HECKMAN LLP
50 California Street, Suite 1500, San Francisco, CA
Telephone: 415-277-5952  Fax: 415-439-5299

## FIFTH CAUSE OF ACTION
### Trade Libel

34.    The averments of all paragraphs of this Complaint are incorporated by reference here.

35.    Upshot's literally false, deceptive, and misleading advertising and related actions were meant to have and have had the effect of explicitly and implicitly disparaging Salesforce's products and services, and were reasonably understood by third parties to be statements of fact about such products and services. Upshot did not have, and could not have had, any genuine or reasonable belief in the truth of the subject literally false, deceptive, and misleading representations. Such disparagement by Upshot has caused and is causing injury to Salesforce and its products' sales, business relationships, reputation, and goodwill. Upshot has acted intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith to injure Salesforce. Salesforce has no adequate remedy at law for some such injuries.

## SIXTH CAUSE OF ACTION
### Common Law Unjust Enrichment

36.    The averments of all paragraphs of this Complaint are incorporated by reference here.

37.    As a result of Upshot's literally false, deceptive, and misleading advertising and related actions, Upshot benefited from increased sales, profits, market share, reputation, and goodwill, some of which Salesforce would otherwise have earned, but for Upshot's actions.

38.    Upshot knew, or reasonably should have known, that the increased sales, profits, market share, reputation, and goodwill that it received resulted directly from its literally false, deceptive, and misleading advertising. Defendants have acted intentionally, willfully, deliberately, maliciously, egregiously, and in bad faith to injure Salesforce. Salesforce has no adequate remedy at law for some such injuries.

Complaint for False Advertising and Unfair Competition

1    39.    It would be unjust for Upshot to retain the benefits conferred upon it as a result of

2    Upshot's literally false, deceptive, and misleading advertising, and its continuance of such

3    practices while knowing of the harm that Upshot could do.

### PRAYER FOR RELIEF

5    THEREFORE, Plaintiff Salesforce requests entry of judgment in its favor and against

6    Defendant Upshot as follows:

7    A.    That Upshot, its officers, employees, agents, and representatives, and any and all

8    persons in active concert or participation with Upshot, be enjoined preliminarily and permanently

9    from making literally false, deceptive, and misleading representations about Salesforce's products

10   and services and from otherwise unfairly competing against Salesforce so as to redress the

11   continuing injury to the sales, profits, reputation and goodwill of Salesforce and its products and

12   services;

13   B.    That an accounting be ordered and judgment rendered against Upshot for

14   disgorgement of all profits received from the sale of Upshot's products and services sold during

15   the period that the subject literally false, deceptive, and misleading representations have been

16   made and that Salesforce be awarded such profits;

17   C.    That Upshot pay compensatory damages to Salesforce in an amount to be determined

18   at trial, including Salesforce's damage control costs, which are attributable to the subject

19   advertising and related actions that caused confusion, a likelihood of confusion, and damages to

20   Salesforce and its products' sales, profits, reputation, and goodwill;

21   D.    That Upshot pay enhanced damages to Salesforce of at least treble the amount of

22   compensatory damages, due to Upshot's intentional, willful, deliberate, malicious, egregious, and

23   bad faith actions, and to deter such actions in the future;

24

KELLER AND HECKMAN LLP
50 California Street, Suite 1500, San Francisco, CA
Telephone: 415-277-5952  Fax: 415-439-5299

1    E.    That Upshot pay punitive damages to Salesforce in an amount to be determined at

2    trial, due to Upshot's intentional, willful, malicious, egregious, and bad faith actions, and to deter

3    such actions in the future;

4    F.    That Upshot be ordered to correct its advertising and publish appropriate corrective

5    advertisements and statements, calling the public's attention thereto;

6    G.    That Upshot pay Salesforce its costs in bringing this action, including reasonable

7    attorneys' fees and expenses associated with bringing and prosecuting this action; and,

8    H.    That Salesforce be awarded such other relief as may be in the interests of justice.

9    DATED: July //, 2003

10

11   Leslie T. Krasny,  State Bar Number 104604
     Richard J. Leighton (to be admitted *pro hac vice*)

12   Richard F. Mann (to be admitted *pro hac vice*)
     Douglas J. Behr (to be admitted *pro hac vice*)
     Frank J. Vitolo (to be admitted *pro hac vice*)

13   KELLER AND HECKMAN LLP

14

15   By: _____
         Leslie T. Krasny

16

17   Attorneys for Plaintiff
     SALESFORCE.COM, INC.

18

19

20

21

22

23

24

KELLER AND HECKMAN LLP
50 California Street, Suite 1500, San Francisco, CA
Telephone: 415-277-5952  Fax: 415-439-5299

KELLER AND HECKMAN LLP
50 California Street, Suite 1500, San Francisco, CA
Telephone: 415-277-5952 Fax: 415-439-5299

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 3-6(a),

Plaintiff Salesforce.com, Inc., demands a trial by jury on all claims in this action that are triable to

a jury.

DATED: July //, 2003

Leslie T. Krasny,  State Bar Number 104604
Richard J. Leighton (to be admitted *pro hac vice*)
Richard F. Mann (to be admitted *pro hac vice*)
Douglas J. Behr (to be admitted *pro hac vice*)
Frank J. Vitolo (to be admitted *pro hac vice*)
KELLER AND HECKMAN LLP

By: _____
       Leslie T. Krasny

Attorneys for Plaintiff
SALESFORCE.COM, INC.

Complaint for False Advertising and Unfair Competition

# Exhibit A

*Case # 0000 (00/00/03)*
**UPSHOT CORPORATION**
**Customer Relationship Management Products**
*Advertising Agency:    In-House*
*Challenger:             Salesforce.com.*
*Product Type:*
*Issues:*
*Disposition:           Modified; discontinued*

- ♦ **While claims of general superiority may constitute puffery, linking a general claim to a specific product or service may result in the need for substantiation**

- ♦ **Comparative superiority claims should be regularly reviewed and tested by an advertiser to ensure they remain accurate and reflect any current market place conditions**

**Basis of Inquiry:** Print advertising by UpShot Corp. ("UpShot") for its Customer Relationship Management ("CRM") products was challenged as false and misleading by Salesforce.com, Inc. ("Salesforce.com") a competing manufacturer of CRM products. More specifically, the challenger questioned the truth and accuracy of the following explicit and implicit claims:

-- UpShot's CRM product is superior to the CRM product of Salesforce.com;

-- UpShot's services are superior to those of Salesforce.com in the area of servicing "large" businesses;

-- UpShot is "The Better Online CRM Solution";

-- "UpShot is the leading web-based, sales-focused CRM solution;

-- UpShot services more medium and large business customers than does Salesforce.com.

-- UpShot's customer volume is equivalent or comparable to that of Salesforce.com.

In the challenged advertisement, the challenger's and advertiser's customer bases are compared graphically via pie charts. The first pie chart, identified as UpShot, indicates that the vast majority of the pie - 93% - is made up of medium and large businesses as compared to a smaller slice - 7% - made up of small businesses. A second pie chart, identified as Salesforce.com, indicates that 58% of the pie is made up of medium and large businesses as compared to 42% of small businesses. The advertisement contains the following headline in bold upper and lower case: "The Better Online CRM Solution." Immediately below the headline (above the pie charts) in small print is the following: "Customer Mix – Customer Relationship Management Magazine, May 2002 (Source:

1

Summit Strategies)." A second headline in bold upper case letters immediately below the pie charts reads: "LARGE BUSINESSES AREN'T HAPPY WITH SMALL RESULTS." In smaller print below the second headline is the following copy:

> "UpShot's clients are medium to large businesses with combined sales revenues in the hundreds of billions of dollars. UpShot is single-mindedly dedicated to increasing companies' sales results. UpShot's solution offers what big businesses demand – superior forecasting, reporting and analytics, integrated sales and marketing modules, and a fully functional offline capability. Delivering big results for demanding clients has made UpShot the leading web-based, sales-focused CRM solution."

The above advertisement appeared in a business publication. Variations of this advertisement also appeared in the same business publication and on the company's website.[1]

**Challenger's Position:**
According to the challenger, the challenged print advertisement contains superiority claims that are false and totally unsubstantiated. The challenger categorized the explicit and implicit claims into the following categories:

-- *The "Better" and "Leading" Claim*
   *(i.e., that UpShot is "The Better Online CRM Solution" and UpShot is the leading, web-based, sales focused CRM solution;*

-- *The Claim that UpShot services are superior to those of Salesforce.com in the area of servicing "Large Businesses"*

-- *Claims that UpShot has more medium and large business customers and a comparable customer volume compared to Salesforce.com*

By way of background, the challenger explained that Salesforce.com is a worldwide leader in the rapidly expanding market for web-based CRM solutions. According to the challenger, Salesforce.com is a privately-held California corporation founded in 1999 with its headquarters in San Francisco, California. The challenger noted that over 5,000 companies of various sizes use Salesforce.com's products to manage their sales,

---

[1] For example, a second print advertisement also compares the challenger's and advertiser's customer bases graphically via a pie chart. In the second advertisement, 66% portion of a pie in green is identified as UpShot compared to 34% portion of a pie in yellow identified as Salesforce.com. Adjacent to the pie chart is the following bold headline: "NEARLY TWICE AS MANY BUSINESSES CHOOSE UPSHOT TO INCREASE SALES." In smaller print below the headline is the following copy: "Find out why." In small print, below the label UpShot 66% (designated by an arrow in a green circle) is the following copy: "Receive a 30-day free trial of UpShot's cost-effective CRM solution and the Topline Strategy Group's 'Online CRM Market Study' identifying why customers choose UpShot over salesforce.com." Finally, in mice type at the bottom of the advertisement is the following: "Third party research of companies that purchased online CRM solutions between March and February 2002 – Topline Strategy Group.
2

marketing, and customer service and support operations. UpShot, the challenger explained, is a direct competitor of the challenger in the online CRM market. Citing the advertiser's website, the challenger noted that UpShot is a privately-held corporation founded in 1996, with its headquarters in Mountain View, California. According to the challenger, UpShot introduced its first online CRM product in 1999.

The challenger explained that Customer Relationship Management, or CRM, relates to integrating people, process, and technology to maximize a company's knowledge and understanding about its customers. According to the challenger, this business strategy allows the company to customize, tailor, and target services to its customers. Indeed, in this regard, the challenger noted that the goal of CRM is to increase efficiency, quality, and satisfaction to engender customer loyalty based on an enriched customer experience, thus fostering longer, more profitable customer relationships. The challenger explained that web-based CRM solutions are CRM applications and services that are offered to companies via the Internet by Application Service Providers ("ASPs"), such as Salesforce.com and UpShot. According to the challenger, Web-based CRM solutions offer an alternative to loading software in personal computers or on network servers, thereby lowering a company's overhead costs and minimizing the burden of having to buy, install, maintain, and manage software.

*The Advertising*

The challenger argued that the advertiser's claims of superiority are based on the fact that, percentagewise, UpShot services more medium and large businesses (as compared to small businesses) than does Salesforce.com. In this regard, the challenger noted that the advertising does not explain the difference between "small", "medium", and "large" business, and does not provide a breakdown between UpShot's and Salesforce.com's "medium" and "large" client bases. In any event, the challenger argued, Salesforce.com is by every relevant measure the market technology leader. According to the challenger, Salesforce.com's total number of customers and revenues generated from medium and large businesses alone far exceed Upshot's total number of customers and revenues generated from all of its customers, even when combining UpShot" small, medium and large business customers.

*The "Better" and "Leading" Claim*

With respect to the "Better" claim, the challenger noted that the challenged advertising begins with the headline, "The Better Online CRM Solution," followed in smaller print by the following statement: "Customer Mix – Customer Relationship Magazine, May 2002 (Source: Summit Strategies)." According to the challenger, the clear implication of the positioning of the "Better" claim immediately followed by the Summit Strategies cite is that the Summit Strategies report is the source of the "Better" claim and, accordingly, the comparative superiority claim is based on objectively measurable data. The challenger argued further that this implication is not diminished by the fact that the reference to Summit Strategies begins with the words "Customer Mix." The challenger noted that the

3

reference to Summit Strategies is to the information reflected in the pie charts that follow the "Better" language and the Summit Strategies reference. However, argued the challenger, it is clearly not accidental that the reference to Summit Strategies precedes, rather than follows, the pie charts. According to the challenger, there is no room for doubt that this juxtaposition was intended to mislead the reader into believing that the reference to Summit Strategies is a source for the "Better" claim rather than the "Customer Mix." The challenger argued further that the fact that the reference to Summit Strategies appears at the beginning of the advertisement, and is not associated with any specific claim, conveys to the reader that all of the claims made in the advertisement are based on objective measurements. According to the challenger, for the reasons set forth below, this is clearly not the case.

With respect to the "Leading" claim, the challenger noted that the challenged advertisement makes the express claim that "UpShot is the leading web-based, sales-focused CRM Solution." According to the challenger, the claim is literally false. In this regard, the challenger argued that according to every analyst, Salesforce.com leads the online CRM marketplace in every segment and continues to grow at a substantial rate. For example, the challenger noted that the company has been cash-flow positive since November 2001, a goal UpShot has not achieved to date. The challenger argued further that its technology has won every major award and review in 2001 and 2002.

In support of its position, the challenger cited an *Executive White Paper*[2] (the "Aberdeen White Paper") prepared by Aberdeen Group, Inc., an information technology ("IT") market analysis. [3] Quoting from pertinent portions of the Aberdeen White Paper, the challenger asserted that while "[s]everal companies including Salesforce.com, Salesnet, and UpShot currently vie for the top spot in the...CRM market," Salesforce.com, not UpShot, is the clear market leader.[4] In this regard, the challenger argued that it has over 2.5 times more clients, and over 1.5 times more revenues, than the advertiser.[5] Furthermore, the challenger argued that as of March 2002, Salesforce.com had 3,800

---

[2] The *Executive White Paper* was dated April 2002.

[3] The challenger cited the Aberdeen Group's website at www.aberdeen.com. According to the challenger, the Aberdeen Group was founded in 1988 and is a leading information technology market analysis and position services firm. The challenger explained that, among other things, Aberdeen Group provides IT market intelligence, positioning, and market acceleration services to various technology companies.

[4] According to the challenger, the Aberdeen White Paper states:

> In the short time that it has been in business, Salesforce.com has managed to take control of its market segment, calling the tune for its smaller rivals and articulating a vision of software as a service for CRM and beyond. Though the company could still stumble, it it clearly the market leader in revenue, growth rate, and in the quality of its customer base. Salesforce.com should be the first to profitability early in 2002. At the moment, it appears The race is Salesforce.com's to lose.

*Id.*

[5] In support of its assertion, the challenger quoted from the Aberdeen White Paper that "in terms of number of customers, the hosted-CRM supplier Salesforce.com is ranked second behind only Siebel according to the Morgan Stanley market sizing study."

4

paying customers and approximately $24.5 million in revenues as compared to the advertiser which, according to the Aberdeen Group, had only 1,400 paying customers and approximately $16 million in revenues. Indeed, asserted the challenger, according to the Aberdeen White Paper, the challenger's total number of customers exceeds UpShot's total number of customers by more than 250% (i.e., the challenger has 3,800 customers compared to UpShot's 1,400 customers). The challenger argued that the Summit Strategies percentages depicted in the pie charts in the challenged advertising do not support the claim that the advertiser handles a greater number of medium and large businesses than the challenger.

The challenger rejected the advertiser's argument that the "Better" and "Leading" claims were puffery. According to the challenger, the claims are not puffery because they (i) contain specific, objective, quantifiable facts, i.e., graphic pie charts and corresponding numerical percentages representing the customer bases of UpShot and Salesforce.com, and (ii) expressly refers to Salesforce.com by name. Indeed, contended the challenger, while vague superiority claims standing alone may be only opinion puffery, such statements become fact-based claims where, as here, the advertising gives objective, quantifiable and fact-specific meaning to the claims.[6]

For the reasons set forth below, the challenger also rejected the results and conclusions of the advertiser's Topline Study.

### Challenger's Critique of Advertiser's Topline Study

According to the challenger, the Topline Study cannot substantiate any of the claims in the advertisement, let alone superiority claims. The advertiser argued that the Topline Study is flawed for the following reasons: Topline is a marketing company, not a market research company; the study was not blinded; the study does not disclose how the original sample was obtained; the study does not specify the "generally accepted methodologies" allegedly used; and the study does not identify the "appropriate techniques" that were purportedly used to eliminate bias or other methods to control for factors that could affect the results.[7]

---

[6] In support of its assertion, the challenger cited <u>Pizza Hut Inc. v. Papa John's Int'l Inc.</u>, 56 U.S.P.Q. 2d 1246, 1256 (5th Cir. 2000) ("Better Ingredients. Better Pizza" slogan was transformed from puffery to statement of fact when slogan appeared in advertising comparing specific ingredients with those of competitors); <u>Performance Indus. Inc. v. Koos Inc.</u>, 18 U.S.P.Q. 2d 1767 (E.D. Pa. 1990) (advertiser's statement that its de-icing product is "more economical" is not puffing, when considered with statement that "one lb. Of [advertiser's product] goes as far as two lbs. of [competitor's product]" and omission of fact that advertiser's product is eight times more expensive per pound); <u>Smith-Victor Corp. v. Sylvania Elec. Prods., Inc.</u>, 242 F. Supp. 302, 308-09 (N.D. Ill. 1965) (statement that advertiser's lamps are "far brighter than any lamp ever before offered for home movies" became actionable when advertiser quantified the alleged superior brightness with statements such as "35,000 candle power and 10-hour life").

[7] The challenger set forth the following reasons why it believed the Topline Study was flawed:
- The study report submitted by UpShot does not provide any information about Topline or Topline's experience in conducting surveys;
- The Topline website located at www.toplinestrategy.com makes it clear that Topline is a marketing company, not a research company. For example, all of its executives have marketing, not market

5

Finally, the challenger rejected the advertiser's argument that it is a leader in "sales-focused" CRM. According to the challenger, "sales-focused" is merely a promotional label. Moreover, argued the challenger, the fact that the advertiser has chosen to market its CRM services as "focused" on "sales force automation" and "increasing sales" does not mean it is a market leader.

### *UpShot services are superior to those of Salesforce.com in the area of servicing "Large Businesses"*

According to the challenger, a key purpose of the challenged advertising is to convince business professionals that the advertiser is superior to the challenger in handling the demands of large businesses. The challenger argued that this message is conveyed through the following:

-- The headline that UpShot is "The Better Online CRM Solution."

-- The pie charts comparing the relative customer bases of UpShot and Salesforce.com.

-- The statement that "UpShot's clients are medium and large businesses with combined sales revenues in the hundreds of billions of dollars."

-- The statement that "UpShot's solution offers what big businesses demand – superior forecasting reporting and analytics, integrated sales and marketing

---

research, backgrounds;

- In the first sentence of the "About Us" page of its website, Topline proclaims that it "is a consulting and market intelligence firm dedicated to one thing – helping technology companies accelerate sales. This alone disqualifies Topline from conducting objective, well-controlled market research studies.
- The study was obviously not blinded;
- The study does not report how the original sample of 1,500 companies was obtained.
- The selection of companies from the original sample involved a significant judgment factor. Specifically, one of the four criteria for selection was that "the prospect gave serious consideration to both companies." This is a classic "fudge factor," not a market research concept.
- The study does not identify the number of companies that met the four criteria for data selection. In other words, while the study concludes that 66% of the companies evaluated chose UpShot, the study does not identify the number of companies actually evaluated. Thus, the final reported percentages could have been based on 30 responses with a 20-10 breakdown.
- The study does not specify the "generally accepted methodologies" allegedly used. For example, while the study states that sales records were reviewed and phone interviews were conducted, the study does not identify the companies whose sales records (presumably those of UpShot) were reviewed. Nor does the study identify the individuals who participated in the phone interviews or the sophistication level of such individuals;
- The study does not provide a questionnaire or identify the questions that participants were asked.
- The study does not specify whether participants reported that they had actually tested UpShot's and Salesforce.com's products, or whether they merely reviewed marketing materials;
- The study does not identify the "appropriate techniques" that were purportedly used to eliminate bias or other methods to control for factors that could affect the results.

6

modules, and a fully functional offline capability."

According to the challenger, the claim that the advertiser's services are superior is unsubstantiated because (I) the challenger has been found to be the market and technology leader in every segment in which the companies compete; and (ii) on a numerical basis, the advertiser does not handle more "large businesses" than Salesforce.com.

*Claims that UpShot has more medium and large business customers and a comparable customer volume compared to Salesforce.com*

As a preliminary matter, the challenger rejected the advertiser's arguments that (i) pie charts are the traditional, graphic tool for expressing percentages; and (ii) that sophisticated corporate executives are unlikely to believe that the pie charts represent anything other than the customer bases of each company, broken down by percentage according to customer type. According to the challenger, the advertiser's arguments completely disregard the context of the challenged advertisement. Indeed, the challenger argued that while pie charts standing alone may represent the percentage breakdown of parts to the whole, the advertisement's use of equal-sized pie charts in a side-by-side comparison of the relative customer bases of UpShot and Salesforce.com clearly conveys the false and misleading message that the two companies share equivalent customer volumes, when in fact Salesforce.com has far more clients.[8] Furthermore, argued the challenger, the advertiser distorted the original graphics before reproducing them by eliminating a critical component – the breakdown between UpShot's and Salesforce.com's "medium" and "large" customers. According to the challenger, both CRM Magazine and the Summit Strategies report upon which the pie charts were based, reported the following customer breakdown by percentage:

|  | Salesforce.com | UpShot |
|---|---|---|
| "Small" Customers | 42% | 7% |
| "Medium" Customers | 30% | 72% |
| "Large" Customers | 28% | 21% |

The challenger argued that based on the above breakdown, as a percentage of total customers the challenger actually has a greater percentage of "large" customers than the advertiser.

**Advertiser's Position**
The advertiser disputed the allegations of the challenger. Indeed, the advertiser argued

---

[8] The challenger also argued that in this case sophisticated professionals are indeed more likely to assume that the superiority claims in the challenged advertising are supported by objective data rather than exaggerated puffing.

7

that UpShot's advertising is fully substantiated in every relevant way and is neither deceptive nor misleading to consumers.

By way of background, the advertiser explained that it provides CRM software to help businesses effectively manage customer relationships. The advertiser calls its web-based CRM solution "sales-focused CRM" and markets itself as "single-mindedly dedicated to increasing companies' sales results."[9] Additionally, the advertiser explained that as a pioneer in the web-based CRM field, UpShot offered its hosted online solution in August 1999 and was the first online CRM company to offer a fully functional offline capability in November 2001. According to the advertiser, thousands of businesses have signed on for the UpShot solution to increase the effectiveness of their sales teams. In fact, the advertiser argued, a recent study by the Topline Strategy Group (the "Topline Study") documents that customers preferred Upshot over Salesforce.com in a head-to-head competition by nearly a 2-to-1 margin.[10] The advertiser also addressed all three categories of "claims" raised by the challenger.

### *The "Better" and "Leading" Claim*

#### *a) The Better Claim*

According to the advertiser, "The Better Online CRM Solution" tagline at the top of the challenged advertisement is a vague, general and subjective opinion that could be construed as a classic example of puffery. In this regard, the advertiser explained that puffery is exaggerated advertising or unspecified boasting, characterized by general, vague and subjective statements upon which no reasonable buyer would rely.[11] The advertiser noted further that puffery involves general and immeasurable opinions of superiority, and consumer reliance is induced by specific rather than general assertions.[12] In fact, argued the advertiser, courts have specifically held that a claim that product was "better" than its competitors to be non-actionable puffing.[13] The advertiser noted that the specific reference to a competitor by name (as in this case) does not transform puffery into a comparative non-puffing superiority claim.[14]

In this regard, the advertiser disputed the challenger's contention that the positioning of

---

[9] The advertiser cited its company website in support of these statements.

[10] In support of its assertion, the advertiser cited the Topline Strategy Group, August 2002.

[11] In support of its assertion, the advertiser cited 4 J Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:38 (4th ed. 2002).

[12] In support of its assertion, the advertiser cited *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242 (9th Cir. 1990).

[13] *See Nikkal Industries, Ltd. V Stallon, Inc.*, 735 F. Supp. 1227 (S.D.N.Y. 1990).

[14] Rather, asserted the advertiser, the test is whether the puffery also claims to prove the superiority with objective tests: "unless a claim that a product is 'better' than a competitor is 'backed-up' with false allegations that 'test-prove' superiority when no such tests exist to support such a claim, the superiority claim constitutes no more than unactionable puffery." *University of Florida Research Foundation, Inc. v. U.S. Biomaterials Corp.*, No. 1:96-CV-82-MMP, 1998 U.S. Dist. LEXIS 22648, at *91 (N.D. Fla. April 20, 1998).

8

the "Customer Mix" citation for the pie charts misleads a consumer into thinking there is objective support for the "Better" tagline.   According to the advertiser, the advertisement features the "Better Online CRM Solution" tagline prominently at the top. The advertiser explained that a line then physically separates the tagline from the body of the advertisement. The next section, the advertiser noted, begins with the citation for the pie charts: "Customer Mix – Customer Relationship Management Magazine, May 2002 (Source: Summit Strategies)." According to the advertiser, the "Customer Mix" citation clearly and unequivocally refers to the pie charts, not the "Better" tagline.[15] Indeed, the advertiser argued that any reasonable consumer would understand from the literal description of the citation that it supports the "Customer Mix" pie charts that follow the citation. The advertiser argued further that a reasonable consumer would also assume that the pie charts are based on objective, measurable data needing a citation and would not assume that a vague and subjective opinion that a company is the "Better Online CRM Solution" needs a citation.

The advertiser argued that even if the "Better" tagline is not considered puffery, it can substantiate such a claim based on a study by the Topline Strategy Group (the "Topline Study").

*The Topline Study*

The advertiser explained that in a recent study, the Topline Strategy Group analyzed over 1,500 companies who had evaluated both the advertiser and the challenger in head-to-head competition and found that companies chose the advertiser over the challenger by an almost 2-to-1 margin (66% to 34% margin). According to the advertiser, the study specifically cites the reasons that customers chose UpShot products and services: "superior ease of use, superior ability to customize, availability of offline operation, superior forecasting functionality," and "superior service" of the Upshot team.[16] Accordingly, the advertiser argued that the Topline Study provides substantiation for the claim that Upshot is 'better."

The advertiser rejected the challenger's criticisms of the Topline Study. According to the advertiser, the Topline Strategy Group is a market research and consulting firm that has significant experience in conducting market research surveys and studies. Indeed, argued the advertiser, the Topline professionals have diverse and extensive backgrounds in marketing, market research, consulting, and economics. With respect to the study itself, the advertiser explained that it originally commissioned the Topline Study in order to analyze its competitive position against Salesforce.com. The advertiser explained further that the study was intended for the advertiser's internal use only, and Topline worked

---

[15] The advertiser noted that the source for the "Customer Mix" pie charts is accurately identified as the May 2002 Customer Relationship Management Magazine. The advertiser explained that it also included the Summit Strategies reference in the interest of complete disclosure to inform the public that the CRM Magazine pie charts were based on information from Summit Strategies.

[16] In this regard, the advertiser noted that the challenger's Aberdeen study does not contradict the Topline Study.

independently with its own methodologies. According to the advertiser, Topline's incentive was to be as honest and unbiased as possible in order to provide an accurate assessment of Upshot's market position.

*b) The "Leading" Claim*

The advertiser noted that the full statement of the advertisement reads: "Delivering big results for demanding clients has made UpShot the leading, web-based, sales-focused CRM solution." According to the advertiser, as in the case of the "Better" claim, this statement could be viewed as another classic example of puffery that needs no substantiation. Indeed, the advertiser argued that similar to the general "better" claim, a statement that UpShot is the "leader" in the CRM field is not a specific comparative superiority claim based on tests or sales numbers. Rather, the advertiser contended, the statement could be viewed as vague, general, subjective puffery.

Notwithstanding the foregoing, the advertiser also maintained that it can substantiate the claim. According to the advertiser, UpShot is a leader in the "sales-focused" CRM. In this regard, the advertiser argued that it markets itself as a "sales-focused" company with the goal of improving its customers' sales processes and results. According to UpShot, all of its software products are centered on increasing sales. In contrast, argued the advertiser, Salesforce.com has marketed its strategy of developing all types of software beyond sales-focused software.[17] The advertiser noted that while the challenger argues that it is the leader in revenues, customer volume and awards, none of these statements contradicts the advertiser's claim that it is the leader in "sales-focused" CRM. Moreover, the advertiser argued that the Topline Study finding that customers preferred UpShot by an almost 2-to-1 margin further substantiates the "leading" claim.

### *The Claim that UpShot services are superior to those of Salesforce.com in the area of servicing "Large Businesses"*

As a preliminary matter, the advertiser noted that nowhere in the challenged advertising does UpShot explicitly claim that it is superior to Salesforce.com in servicing large businesses. According to the advertiser, the challenged advertising simply shows the customer bases of each company, broken down by percentage according to customer type. The advertiser argued that it does not state that the challenger is inferior in servicing big clients. According to the advertiser, even if a reasonable consumer were to interpret the advertisement as an implied claim that UpShot is superior at servicing bigger clients, the advertiser maintained that it can substantiate this interpretation because it specializes in delivering results to medium and large businesses. In this regard, the advertiser noted that even if the challenger's claim to have a larger absolute number of medium and large business customers were true. The advertiser's devotion to medium and large businesses is a valid, reasonable basis for superiority. Indeed, argued the advertiser, the challenged

---

[17] In this regard, the advertiser noted that the challenger's website highlights its varied product offerings: "online CRM applications for sales force automation, customer service & support, and marketing automation."

10

advertisement shows that the advertiser's customer base is primarily composed of medium and large businesses which demand strong performance results. According to the advertiser, the Topline Study shows that UpShot provides these results. Accordingly, the advertiser maintained that it is perfectly legitimate to imply superiority based on its focused specialization in servicing medium and large businesses, regardless of the total number of big businesses serviced.

### *Claims that UpShot has more medium and large business customers and a comparable customer volume compared to Salesforce.com*

According to UpShot, its advertisement does not imply that it has more medium and large customers than Salesforce.com. Rather, contended the advertiser, of its total customer base, a higher percentage are medium and large customers. The advertiser displays two pie charts to show the customer breakdown by percentage for each company. According to the advertiser, pie charts are the traditional, graphical tool for expressing percentages. The reasonable consumer, argued the advertiser, understands that pie charts show 100% of a pie and percentage breakdowns of parts to the whole. Moreover, inasmuch as the target audience for the challenged advertisement is sophisticated business professionals, the advertiser asserted that they will interpret the pie charts as representations of percentages and are unlikely to believe that the pie charts represent anything other than the customer bases of each company, broken down by percentage according to customer type.

### Decision[18]
NAD began its review by examining the challenged claims in the context in which they appeared. Since neither party submitted any consumer perception evidence to support its interpretation of the advertisements, NAD used its own experienced judgment to determine the reasonable messages conveyed.[19] For the sake of clarity and consistency with the approach of the parties, NAD addressed the challenged claims according to the following categories.

### *The "Better" and "Leading" Claims*

The headline of the challenged advertisement reads in upper and lower case block letters: "The Better Online CRM Solution." According to the challenger, the headline is not puffery, but rather an objective statement capable of being measured. The advertiser, on the other hand, argued that the headline (sometimes referred to as a tagline by the advertiser) is a general, non-referential statement that falls within the realm of puffery. After reviewing the claim in the context of the entire advertisement, NAD agreed with the challenger. While the "Better" headline, standing alone, may be general and non-referential, in the context of this advertisement which explicitly names Salesforce.com and describes its customer base, consumers are provided with a comparative context in

---

[18] NAD noted that the findings of its decision are also applicable to the variations of the advertisement reviewed in the instant challenge.

[19] *E.g.,* Whitehall-Robbins Healthcare, *NAD Case Reports* (May 1999).

11

which a reasonable take-away message is that UpShot is a "Better" CRM Online solution for large businesses than Salesforce.com. Indeed, as NAD noted in prior cases, while claims of general superiority may constitute puffery, linking a general claim to a specific product or service may result in the need for substantiation.[20]

NAD came to the same conclusion with respect to the "leading" claim. The "leading claim" is contained in the following statement which appeared at the end of the challenged advertisement: "Delivering big results for demanding clients has made UpShot the leading web-based, sales-focused CRM solution." As the challenger argued and NAD agreed, the preceding statement was not puffery, but rather a narrowly drawn, objective statement capable of verification.

Having determined that the comparative context of this advertisement rendered these claims objectively provable performance claims, NAD turned to the evidence offered by the advertiser to support its superiority claims. As a preliminary matter, NAD agreed with the advertiser that business volume is not the only legitimate measure upon which a superiority claim may be based and, ultimately, supported. Indeed, as the advertiser noted and NAD concurred, the advertiser's concentration on medium and large businesses may be a valid basis to upon which some type of superiority claim may be based, provided there is underlying support. However, NAD did not agree with the advertiser's contention that its decision to focus on "sales" in medium and large businesses, in and of itself, provided a reasonable basis of support for the claim that it is "the leading web-based, sales-focused CRM solution." Indeed, without some measurable criteria, as the challenger noted, the "sales-focused" quantifier is merely a promotional label. As the challenger noted, the fact that the advertiser has chosen to market its CRM services as "focused" on "sales force automation" and "increasing sales" to medium and large businesses does not mean that it is a market leader.

Consequently, NAD turned its attention to the only other evidence offered by the advertiser to support its "leading" claim – the Topline Study. According to the results of the Topline Study, in a head-to-head study, companies who evaluated both UpShot and Salesforce.com chose UpShot by an almost 2-to-1 margin (66% to 34% margin). As a preliminary matter, NAD noted that a study analyzing a customer's preference for one business service over another invariably involves a certain degree of subjectivity on the part of the participants. Accordingly, NAD noted that there should be a certain degree of flexibility in assessing the validity of a business study designed to determine customers' preferences as opposed to more clinical studies designed to test a product's efficacy or safety. As the advertiser noted, the Topline Study was originally commissioned for internal use only with its purpose to be as honest and unbiased as possible in order to provide an accurate assessment of the advertiser's market position. Although NAD believes that the advertiser should be free to tout certain findings from the study (e.g., that customers like the ease of use, ability to customize, etc.), NAD determined the study was not sufficient to support a "better" or "leading" superiority claim. In this regard, NAD

---

[20] *E.g.*, Real Time Media, *#3755 NAD Case Reports* (May 2001).

12

noted that it shared many of the challenger's concerns with respect to the validity of the Topline Study, i.e., that the study does not identify the number of companies that met the criteria for data selection, the study does not specify the "generally accepted methodologies" or identify the "appropriate techniques" used to eliminate bias. Moreover, NAD found particularly troublesome the relevant dates of the study. According to the advertiser, the results of the Topline Study were based on companies that purchased online CRM solutions between March 2001 and February 2002. It is well-established that superiority and comparative claims should be regularly reviewed and tested by an advertiser to ensure they remain accurate and reflect current market place conditions.[21] Here, the Topline Study is more than a year old. NAD noted that this is an especially long period of time in a fast-paced, highly technical industry where innovations occur almost on a daily basis. Indeed, the entire CRM online industry has evolved from embryonic beginnings to a solid industry in a matter of a few years.  In view of the foregoing, NAD determined a "leading" claim should be supported by current, up to date research.[22]

For all the foregoing reasons, NAD concluded that the evidence was not sufficient to support the advertiser's "better" and "leading" claims were and, therefore, recommended that they be discontinued.[23]

### The Claim that UpShot services are superior to those of Salesforce.com in the area of servicing "Large Businesses"

It is undisputed between the parties that the challenged advertisement does not contain any explicit claims that the advertiser's services are superior to those of the challenger's. According to the challenger, an implicit comparative superiority claim is conveyed based on the following factors: 1) The headline that Upshot is "The Better Online CRM Solution"; 2) the pie charts comparing the relative customer bases of Upshot and Salesforce.com; 3) the statement that Upshot's clients are medium and large businesses with combined sales revenues in the hundreds of billions of dollars; and 4) the statement that Upshot's solution offers what big businesses demand – superior forecasting reporting and analytics, integrated sales and marketing modules, and a fully functional offline capability.

After carefully reviewing these claims in the context of the challenged advertisement and assessing the net impression conveyed, and in the absence of consumer perception evidence, NAD determined that consumers could reasonably take away the message that UpShot's' services are superior to those of the challenger's in servicing large businesses.

---

[21] *See, e.g.*, E-Campus.com, Inc., *#3689 NAD Case Reports* (September 2000).

[22] NAD also noted that the Topline Study focused solely on a head to head comparison between Salesforce.com and UpShot. Based on the evidence in the record, there are other major players in the CRM online field. Accordingly, a "leading" claim must be supported by a comparison of all of the major players in the industry.

[23] NAD noted that its decision here is also applicable to the claims made in the variations of the challenged advertising that are part of the same advertising campaign and involve the same claims.

13

In reaching this determination, NAD considered, but was not persuaded by the advertiser's argument that its list of its capabilities are monadic in nature and are not transformed into superiority claims by the rest of the advertisement. More specifically, NAD noted that the claim that the advertiser "offers what big businesses demand – superior forecasting, reporting and analytics" provides consumers with a context in which they may reasonably take-away the message that UpShot's services (i.e., forecasting, reporting and analytics, etc.) are superior to those of the challenger's. Given that there is no evidence in the record demonstrating that the advertiser's services are superior to the challenger's in these respects, NAD determined the advertiser's superiority claims are not supported and recommended that the claims be modified to avoid conveying a superiority message.

### *Claims that UpShot has more medium and large business customers and a comparable customer volume compared to Salesforce.com*

Lastly, NAD determined that the pie charts in the challenged advertisement were not likely to convey the implied message that the advertiser has more medium and large business customers than the challenger or a comparable customer volume to that of the challenger. NAD determined the advertiser's pie chart depiction reflected accurate information regarding the make-up of its customer base and that of the challenger's. The information upon which the advertiser's pie chart depiction was based came from two sources – Customer Relationship Management Magazine and a Market Strategy Report by Summit Strategies – both of which were disclosed by the advertiser in the challenged advertisement. Indeed, as the advertiser noted, the same information was used by the challenger on its website. In reaching this determination, NAD considered but was not persuaded by the challenger's argument that the advertiser's use of equal-sized pie charts in a side-by-side comparison of the relative customer bases of the advertiser and challenger conveyed the implicit message that the two companies shared equivalent customer volumes. As the advertiser argued and NAD agreed, pie charts are traditional, graphical tools for expressing percentages of the whole. In this regard, NAD noted how important it is for advertisers be able to distinguish their products and/or services from their competitors' by touting any distinctive  differences which may provide benefits to consumers.

### Conclusion

NAD concluded that the challenged advertisement did not reasonably imply that the advertiser has more medium and large business customers or comparable customer volume compared to challenger. However, NAD concluded that the headline, "The Better CRM Online Solution" and the claim that it was "the leading, web-based, sales-focused CRM solution" were not supported by the evidence in the record and, consequently, recommended that they be discontinued. Further, NAD concluded that the advertisement conveyed the unsupported implied message that UpShot's services are superior to those of Salesforce.com's in servicing large businesses and, consequently, recommended that the claims be modified to avoid conveying a superiority message.

14

## Advertiser's Statement

UpShot Corporation ("UpShot") supports the NAD self-regulation process and appreciates the time and attention the NAD has spent on this matter. UpShot respectfully disagrees with certain of the NAD's findings. However, prior to the NAD's decision, UpShot had stopped buying placements for the advertising due to the normal rotation of UpShot's advertising. Thus, UpShot does not plan to appeal the decision since the matter is now moot. In any event, UpShot believes the quality of UpShot's online CRM product is substantiated by its numerous satisfied customers as well as by independent research such as that of Summit strategies, a firm cited by Salesforce.com itself, which gave UpShot's online CRM product a higher grade than it gave UpShot's competitors, including Salesforce.com. *See* Summit Strategies report "Net-Native Software-as-Services CRM Vendors' Rx for CRM Blues," October 2002. The NAD decision did not address the Summit Strategies report that was included in the record.

UpShot has been on the cutting edge of innovation in its field, being the first online sales management solution in the marketplace and consistently being the first company to offer key product features such as full e-mail integration with Microsoft Outlook, robust and comprehensive offline capabilities, seamless integration with desktop applications such as Microsoft Office and PowerPoint, sully customizable forecasting and reporting, and unlimited sales processes and views. These product advances further establish the superiority of UpShot's product offerings. To the extent UpShot's advertising was deficient by failing to identify, in the advertising itself, substantiation for UpShot's claims of superiority, it will include such substantiation in the future.

# Exhibit B

# CRM That Works The Way You Do

See "Integration of Outlook Key to Hosted CRM," eWeek, Nov. 11, 2002

## UpShot

**Built-In Ability to Receive & Store Outlook® E-mail Available Now**



## salesforce.com

**Built-In Ability to Receive & Store Outlook® E-mail — Not Available**

# IF YOUR CRM DOESN'T WORK WITH YOUR OUTLOOK E-MAIL, IT WON'T WORK FOR YOU.

For CRM to be effective, it needs to work the way your salespeople do. For example, most salespeople use Microsoft Outlook® for their E-mail. UpShot is the only online CRM solution with the built-in ability to send, receive and store Microsoft Outlook E-mail. That means all of your critical sales communications, information and documents are in one place. Bottom line: increased productivity and increased sales results. So, you see it's no surprise that when UpShot and salesforce.com go head-to-head, nearly twice as many companies choose UpShot.

CALL 1.888.224.3720 OR VISIT US AT WWW.UPSHOT.COM/BW TO RECEIVE A
COPY OF THE YANKEE GROUP WHITE PAPER, "WEB-BASED CRM: FASTER RESULTS, INCREASED SALES."



**UpShot** SEE RESULTS NOW.

Salesforce.com and the salesforce.com logo are marks of salesforce.com, Inc. Microsoft and Outlook are registered trademarks of Microsoft. All other product and company names mentioned are the property of their respective owners and are mentioned for identification purposes only. ©2003 UpShot Corp.

# Exhibit C

꠸**UpShot®**   **See results now.**

Home / News / CRM Resource Center /

## Free White Paper from Topline Strategies Group



**UpShot CRM**

UpShot 66%*

salesforce.com 34%*

**Businesses looking for better
sales results - look to UpShot**

Topline Strategy Group, an independent research company, analyzed the performance of UpShot and salesforce.com in deals in which they competed head to head. The conclusion? Companies that evaluated both solutions chose UpShot by a nearly 2-to-1 margin.

If you're considering a hosted CRM solution, why not benefit from the experience of other customers that faced a similar choice? To receive a copy of the report detailing why customers overwhelmingly chose UpShot, just fill in the following information and click the submit button.

If you have any questions or would like to speak with someone immediately, please call 1-888-700-8774.
Note: All fields are required

| Contact Information | |
| --- | --- |
| Company | |
| First name | ▾ |
| Last name | |
| Work phone | |
| Work e-mail address | |
| State | [ ------ Select if from US ------ ] ▾ |
| Country | United States ▾ |

Number of employees in your
company

What is your implementation
timeline?                     Select                ▾

**submit**          **reset**

Salesforce.com and the salesforce.com logo are marks of salesforce.com, Inc.
and are mentioned for identification purposes only.

copyright / security policy / privacy policy / site index / careers
Copyright © 1998-2003. UpShot Corp. All rights reserved.